SAMUEL HAMMOND, Respondent, *v.* GEORGE W. PENNOCK, Appellant.

It *seems* that an equitable action to rescind a contract may be based upon a misrepresentation or suppression by the defendant of a material fact, without proof of an intent, upon his part, to defraud.

Where a party seeking to rescind a contract, on the ground of fraud, acts without unnecessary delay, and restores or offers to restore that which he has received, it is no defence that the wrong-doer has, by his own act, made a full restoration impossible on his part, or has entered into obligations to others. He cannot prevent a restoration, as far as is within his power, by showing that he has himself done acts which prevent his being restored to his original position.

The party defrauded has his option to sue for damages or to take such imperfect restoration as is in the power of the wrong-doer to give.

Where the wrong-doer has made sales of property received by him under the contract he may be treated as a fraudulent trustee, and compelled to transfer the proceeds as far as they can be traced, and to account for such as cannot be traced.

Plaintiff sought to rescind a contract on the ground of fraud, in pursuance of which he had transferred to defendant certain real and personal property in exchange for certain lands conveyed to him by defendant, he agreeing to pay off a certain mortgage on the real estate. Defendant had sold the personal property and had contracted to sell to third parties portions of the real estate, covenanting to remove the lien of the mortgages in case plaintiff did not. The court found the fraud, directed a conveyance of the property unsold, an assignment of the contract of sale, and a recovery of the proceeds of sales upon the restoration by plaintiff of what he had received, and his indemnifying defendant from the mortgages. *Held*, no error; also that the persons holding the contract of sale were not necessary parties, as no relief was sought for or obtained as against them; nor were the wives of the parties necessary parties to the action. As to plaintiff's wife, his estate being subject to be defeated on account of the fraud at his election, and he having so elected, his wife's dower necessarily failed; as to defendant's wife, if the defeat of his seizin did not destroy her right of dower, he could not complain that plaintiff's relief is thus rendered incomplete.

(Argued May 22, 1874; decided September term, 1874.)

APPEAL from an order of the General Term of the Supreme Court in the fourth judicial department denying a new trial on a case and exceptions, under section 268 of the Code. (Reported below, 5 Lans., 358.)

The action was brought to rescind a contract between the parties for the exchange of lands and personal property, and to set aside conveyances made in pursuance of the contract.

The ground for rescission was that the defendant had made to the plaintiff false and fraudulent representations as to his lands.

The answer denied the allegation of fraud. It also alleged that the defendant had contracted to sell the major part of the property purchased of the plaintiff to Nutting & Field, who had made valuable improvements thereon with the plaintiff's knowledge and assent, and that these persons, with one Bidgood (to whom the interest of Field had been transferred), and their wives were necessary parties to the action, and that the wife of the plaintiff, as well as of the defendant, having inchoate rights of dower, were also necessary parties. The case was tried at Special Term. The following facts appeared at the trial.

The plaintiff, in December, 1867, owned real and personal property at Dexter, Jefferson county, worth from $8,000 to $10,000 ; this he proposed to sell to the defendant for money or pine timber ; the defendant offered to exchange for this property good pine land in Michigan, which he said he had of his brother, and which, he stated, was worth thirty dollars per acre, and more ; he affirmed that his brother had obtained it sixteen years before, and that it was all covered with the best pine timber ; and that while he had not been there himself, he could depend upon what his brother told him ; if he told him it was good he knew it was good ; he asserted that a branch of the Black river ran across the land large enough to float the largest spars, and that he knew that there were 3,000,000 feet of pine on the 320 acres which he proposed to sell, and that he had paid the taxes, mentioning the amount. The defendant told the plaintiff to go and look at the land. It was afterward stated that the snow was so deep that he could not see it.

On December twenty-first the defendant told the plaintiff

that one Comins wanted the land, and that he must know
the plaintiff's conclusions right away. The plaintiff relied
upon these representations, and on Monday, December
twenty-third, the parties came to a definite conclusion, the
contract being drawn by the defendant. Under its pro-
visions 320 acres were contracted to be sold, in exchange
for plaintiff's said property, by defendant, situate in the
county of Alcena, Michigan, in township twenty-seven,
range nine east, without mention of any specific land,
and also eighty acres more, with a proviso, that if there
were 4,000,000 of feet of pine on the 320 acres, the plain-
tiff should reconvey the eighty acres. Plaintiff agreed to
pay two mortgages upon his premises of about $1,900.
As a matter of fact, there was no pine timber, of pecuniary
value, on any of the land, nor was it situate on any navigable
branch of the Black river, and it was of no value. It was
land belonging, at the time the contract was made, to the
State of Michigan, known as "Swamp land." At that time
the defendant had no title to it, but purchased it from the
State December 27, 1867, with money that he had sent for
such purchase on the twenty-first. It appeared, however,
that he had, in some sense, located these lands through one
Hewlett, though he had no title to them, nor were they
entered in his name. It was not true that defendant had paid
taxes upon the property, nor had Comins ever offered to
purchase it.

On March 25, 1868, the plaintiff, in pursuance of the con-
tract, conveyed, by a deed executed by himself and wife, the
premises in Dexter to the defendant. It was further agreed,
on the same day, that the deed from the defendant and wife
to the plaintiff, of the Michigan land, should be duly executed
by himself and wife, and placed in the hands of one Mr. Rell
as security that the plaintiff would pay and satisfy the mort-
gages. This was done accordingly. This deed had not
been delivered to the plaintiff. On the thirteenth of April
the defendant contracted with Nutting & Field to sell
them the larger portion of the property which the plain-

tiff had contracted to sell to the defendant. Under this instrument Nutting & Field took possession. On the 11th of June, 1868, the plaintiff gave the defendant written notice that he offered to rescind the contract of December twenty-third; that he relinquished all claim to the deed of the Michigan lands, and that he demanded a reconveyance and delivery of the property, real and personal, by him transferred to the defendant, and an assignment of any contract by him made for the sale of it, and an accounting for all moneys received under it. He placed this demand upon the falsity of the defendant's representations.

At the trial the plaintiff made a tender to the defendant of a deed of all his interest in the land.

The judge found that the fraud alleged in the complaint was established by the evidence, and that plaintiff was entitled to a rescission of the contract, and a restoration of the property acquired of him by the defendant on relinquishing and restoring the real estate given in exchange by the defendant, and to the value of all the personal property which had been sold by the defendant. In regard to the Nutting & Field contract he gave special directions, in substance, that the plaintiff was entitled to a conveyance of all the property unsold, and to an assignment of the contract, and to the right and interest of the defendant to the money due and to become due upon the same; and to a recovery, from the defendant, of the proceeds of the sale to Nutting & Field, so far as such proceeds had come into his possession, or that of any other person for his benefit, upon the plaintiff executing to the defendant a bond, with sufficient sureties, to indemnify and save harmless the defendant from the mortgages which the plaintiff had, as between him and the defendant, agreed to pay, and to which the defendant, as between himself and Nutting, had assumed.

The decision then provided for the appointment of a referee to ascertain all necessary facts; and further directions were reserved until the coming in and confirmation of the referee's report.

*Francis Kernan* for the appellant. There was no evidence to sustain the cause of action made by the complaint. (*Putnam* v. *Hubbell*, 42 N. Y., 106.) To sustain an action for fraud, founded upon representations made by defendant, it must be established that he believed or had reason to believe them untrue. (*Wakeman* v. *Dalley*, 51 N. Y., 27; *Marsh* v. *Faulkner*, 40 id., 566; Story's Eq. Jur., §§ 192–194; *Taylor* v. *Fleet*, 4 Barb., 95, 107; *Weed* v. *Case*, 55 id., 534; *Robinson* v. *Flint*, 40 N. Y., 565.) A party who would rescind a contract, upon the ground of actual fraud, must act promptly and restore or offer to restore to the other party what he received under it.) *Wheaton* v. *Baker*, 14 Barb., 594; *Moyer* v. *Shoemaker*, 5 id., 319; *Mason* v. *Bovet*, 1 Den., 69, 73, 74; *Baker* v. *Robins*, 2 id., 136; *Voorhees* v. *Earl*, 2 Hill, 288; *Cobb* v. *Hatfield*, 46 N. Y., 533; Wall. Eq. Jur., 302, 303.) A court of equity has not jurisdiction of an action merely to recover damages. (*Wiswall* v. *McGowen*, 2 Barb., 270, 281; *Rempshall* v. *Stone*, 5 J. Ch., 193; Sedg. on Dam., 10.) To entitle a party to relief, on the ground that he had acted under a mistake of fact, it must be a fact of which the party could not by reasonable diligence get knowledge when put upon inquiry. (Story's Eq. Jur., § 146; *Taylor* v. *Fleet*, 4 Barb., 95, 108; *Marvin* v. *Bennett*, 26 Wend., 169.) Damages are not awarded by courts of equity, on the ground of a mutual mistake of fact. (2 Greenl. Cruise, 800 [marg. 411]; Will. Eq. Jur., 69.)

*Milton H. Merwin* for the respondent. Defendant was guilty of intentional fraud in making the sale. (Kerr on Fraud [Bump's ed.], 92–104, *note; Clark* v. *Baird*, 9 N. Y., 183; *Wellink* v. *Vanderwear*, 1 Barb., 599; Story's Eq. Jur., § 192.) Defendant knew his representations as to the character and location of the land were false, and was liable for the fraud. (*Bennett* v. *Judson*, 21 N. Y., 238; 1 Story's Eq. Jur., § 1933; *Smith* v. *Richards*, 13 Pet., 26; *McFerran* v. *Taylor*, 3 Cranch, 281; Kerr on Frauds, 102.) There was at least a mutual mistake as to the existence of the

subject-matter of the contract, and plaintiff is entitled to relief. (Will. Eq. Jur., 69 ; 1 Story's Eq. Jur., § 142 ; *Dale v. Rosevelt,* 5 J. Ch., 174; 2 Cow., 129; *Marvin v. Bennett,* 8 Paige, 321 ; 26 Wend., 169 ; *Taylor v. Fleet,* 1 Barb., 471 ; 44 N. Y., 525 ; 64 Barb., 71 ; Adam's Eq., 188 ; 18 Wend., 407 ; 1 Ves. Jr., 210 ; 2 Paige, 84, 134 ; 4 Seld., 331–335 ; 4 Lans., 41 ; Kerr on Frauds, 416, *note* 431 ; *Seger v. Bonaffe,* 2 Barb., 479 ; *Allen v. Hammond,* 11 Pet., 63–72 ; 34 Beav., 611.) Fraud cannot be sheltered under a stipulation for damages. (Sedg. on Dam. [4th ed.], 460, *note* 2 ; *Wamburgh v. Birner,* 25 Ind., 368.) Plaintiff's failure to inquire was not negligence. (*Mead v. Bruce,* 32 N. Y., 275 ; *Haight v. Hayt,* 19 id., 464 ; 8 Cow., 195 ; 8 C. B. [N. S.], 477 ; 9 M. & W., 54 ; 12 Q. B., 531.) This is a case for a court of equity. (*Major v. Griswold,* 3 Sandf., 463, 477 ; *Wiswall v. McGowan,* 2 Barb., 270 ; 44 N. Y., 525, 531 ; *Dale v. Rosevelt,* 5 J. Ch., 174, 182 ; 2 Cow., 129 ; *Belknap v. Seeley,* 14 N. Y., 143 ; 2 Barb., 475 ; *Marquard v. Mayor,* 2 Kern., 336.)

DWIGHT, C. This is an appeal from an order of the General Term, denying a new trial, under the provisions of section 268 of the Code.

The first question is, whether there was any evidence to justify the finding of the court below, that the contract sought to be rescinded was made through fraud. This court cannot disturb this conclusion unless it is unsustained by evidence.

There is evidence to show that material representations, upon which the plaintiff relied, were false. These were of such a nature that he could scarcely have believed them to be true ; or, in other words, of such a kind, that he had no reasonable ground to believe them to be true. Where a party to a contract in making a false representation is honestly mistaken, there is no ingredient of fraud in the case. (*Wakeman v. Dalley,* 51 N. Y., 27 ; *Marsh v. Falker,* 40 id., 566, citing *Chester v. Comstock* in note ; *Meyer v. Amidon,* 45 id., 169 ; *Oberlander v. Spiess,* id., 175.) This rule, how-

ever, does not permit him to make false statements recklessly or without some foundation for belief in them. Before one positively affirms the existence of a fact, he must proceed upon reasonable inquiry, and have some apparently good ground for his affirmation. (*Smith* v. *Reese River Co.*, L. R. [2 Eq. Series], 264 ; *Hawkins* v. *Palmer*, 57 N. Y., 664.)

Tested by this principle it will be observed that there was some evidence of fraud in the case at bar. The defendant asserted that the land sold by him was thickly covered with pine ; that it was crossed by a branch of the Black river, represented to be a navigable stream emptying into Lake Huron, and that it was worth thirty dollars per acre. At the same time he knew that he was only paying the State of Michigan nine shillings an acre for this very land ; and not far from the time of the sale, was looking for land in the vicinity at fifty cents per acre. It is claimed that he had located this land, or his father had done so, many years before. There was, however, apparently no obligation, binding on the State of Michigan, to sell him the land. There had been no entry, no payment, no " squatter claim " — the land being wild and an unbroken forest. Under these circumstances it is difficult to see how he had any reasonable ground to believe his assertions. He must have known them to be false. There were, over and above this, positive assertions, which the evidence shows that he knew to be false. One of these was that a Mr. Comins wanted to purchase the land, and that if the plaintiff intended to buy he must act quickly. This was calculated to mislead the plaintiff and to induce him to suppose that the land was a desirable purchase. That such statements, acting on the mind of a purchaser, are fraudulent, see *Smith* v. *Countryman* (30 N. Y., 655). In that case the false representation was made in the purchase of hops ; that the buyer had bought the hops of one E., for a specified price per pound. As the seller was influenced in making the sale, by this statement, it was held to be a case of fraud. In *Van Epps* v. *Harrison* (5 Hill, 63), the fraudulent affirmation

was that a vendor had paid $32,000 for the land sold, when, in fact, he had paid but $16,000.

The real question is, whether the fraudulent affirmation was upon a material point, and whether the injured party relied upon it. There was evidence upon all these points sufficient to justify the court in finding the conclusions to which it arrived.

The case has thus far been considered as though the fraud requisite as a basis for rescinding a contract in equity is the same in nature as that demanded in a court of law in an action for damages for deceit. In equity, the right to relief is derived from the suppression or misrepresentation of a material fact, though there be no intent to defraud. (Per Lord ROMILLY, in *Peek* v. *Gurney*, L. R. [13 Eq.], 79, 113 ; *Wilcox* v. *Iowa University*, 32 Iowa, 367.) This view has been applied to innocent misrepresentations in a prospectus, providing that they were of the essence of the contract. (*Smith* v. *Reese River Co.*, L. R. [2 Eq.], 264; *Kennedy* v. *Panama Co.*, L. R. [2 Q. B.], 580.) This doctrine is, substantially, grounded in fraud, since the misrepresentation operates as a surprise and imposition upon the opposite party to the contract. It is inequitable and unconscientious for a party to insist on holding the benefit of a contract which he has obtained through misrepresentations, however innocently made. (1 Story on Eq. Jur., § 193, and cases cited; Perry on Trusts, § 171.)

There can be no doubt that, in this aspect of the case, the defendant obtained the property of the plaintiff through misrepresentations which are material, even though it be assumed that they were made without bad intent on his part.

Assuming that there was evidence from which fraud could be found, the next inquiry is, whether the court, acting as a court of equity, should have rescinded the contract. It is objected on the part of the defendant that the plaintiff did not act promptly and restore, or offer to restore, what he received under the contract. It is, undoubtedly, a general rule of law, that a party who would rescind a contract, upon

the ground of fraud, must act promptly and restore, or offer to restore, to the other party what he received under it. But this rule only means that he must restore what he himself has received, and has, by force of the contract, under his own control. If the wrong-doer has, by his own act, complicated the case, so that full restoration cannot be made, he has but himself to blame. No one, perhaps, has stated this qualification more satisfactorily than the late Judge BEARDSLEY, in *Masson* v. *Bovet* (1 Denio, 69); he there said: "If a party defrauded would disaffirm the contract, he must do so at the earliest practicable moment after the discovery of the cheat. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate; nor can he be allowed to deal with the subject-matter of the contract and afterward rescind it. The party who would disaffirm a fraudulent contract, must return whatever he has received upon it. This is on a plain and just principle. He can not hold on to such part of the contract as may be desirable on his part, and avoid the residue, but must rescind *in toto*, if at all.

"It was urged on the argument, that a contract cannot be rescinded by one of the parties, alone, so as to authorize a recovery by him of what had been paid on it, unless the other party is thereby fully restored to the condition in which he stood before. This is certainly the general rule, but in cases of fraud it can only mean that the party defrauded, if he would rescind the contract, must return, or offer to return, everything he received in execution of it. To retain the whole, or a part only, of what was received upon the contract, is incompatible with its rescission.

"This is not exacted on account of any feeling of partiality or regard for the fraudulent party. The law cares very little what his loss may be, and exacts nothing for his sake. If, therefore, he has so entangled himself in the meshes of his own knavish plot that the party defrauded cannot unloose him, the fault is his own, and the law only requires the injured party to restore what he has received, and, as far as he

can, undo what had been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing require of him. If this fail to extricate the wrong-doer from the position that he has assumed, it is in no sense the fault of his intended victim, and upon the principles of eternal justice whatever consequences may follow should rest on the head of the offender alone."

Following this principle, it is to be considered whether the plaintiff has proceeded with due diligence in rescinding the contract, and when he did proceed, whether he offered to return whatever was in his power to restore.

. The contract was executed December 23d, 1867. There was a supplemental contract made March 25th, 1868. This secured the payment, by the plaintiff, of two mortgages on the premises to be executed by him to the defendant. About that time the plaintiff conveyed, in accordance with the contract, to the defendant, and put him in possession. The defendant, on his part, executed and delivered the deed of the Michigan lands to Bell, for the plaintiff.

The plaintiff served the notice offering to rescind on the eleventh of June, almost three months after the consummation of the transaction.

The explanation of the delay is to be found in the following circumstances: The land in Michigan was low and swampy, not on or contiguous to any public or private road, and wholly wild and uncultivated. During the winter the snow was so deep that the defendant himself stated that it was impossible to examine it. There were no railroads nearer than one hundred miles; no water communication with the property. The nearest market for saw-logs was nine miles distant. It is obvious that such land as this could not be inspected in the early spring, nor until the snow had thawed and the weather had become settled. The plaintiff visited these lands in June, when he learned that they were worthless.

Under these circumstances, I think that the plaintiff pro-

ceeded with sufficient promptness in serving the notice to rescind on June 11th, 1868.

Some criticism was made in behalf of the defendant of the form of the notice to rescind. At the outset it purported to be a mere offer to rescind, with a statement that the defendant was "at liberty" to take possession of the deed of conveyance of the Michigan lands. It however proceeded to *demand* a reconveyance of the land granted by the plaintiff, and a delivery of all the personal property received, or its avails. It then states that the plaintiff was induced to enter into the contract by representations made by defendant as to the value of the Michigan land, and the amount of timber upon it, which were for the most part wholly untrue.

Although the notice was somewhat informal, still it sufficiently communicated to the defendant the intent to rescind, and the ground on which rescission was to take place.

In the interval between the execution of the contract and the notice to rescind, viz., April 13th, 1868, the defendant sold by contract a portion of the Hammond property to Nutting & Field, for $5,750. He agreed to give a warranty deed for the premises, and also to pay a mortgage of $1,900 upon them, if the plaintiff did not. The defendant claims that these facts stand in the way of rescission, as the defendant cannot be restored to his original position.

The case falls within the rule in *Masson* v. *Bovet*, already cited. Whatever difficulty has been occasioned is due to the defendant's own act. Conceding, as we must, that the defendant was guilty of fraud, he cannot answer the plaintiff's claim for a rescission by showing that he has done acts which prevent him from being restored to his original condition. It is enough that the plaintiff has done no such acts. He had his option to sue for damages or to take such imperfect reparation by way of rescission as the defendant is now able to give. He has chosen the latter alternative, and the defendant has no reason to complain.

It is, however, further objected that the court, acting as a court of equity, had no jurisdiction, as the claim was one for

damages. This objection is untenable. In the first place, it appears that the whole of the property sold by the plaintiff was not transferred to Nutting & Field under the contract already referred to. As to that which remains the court clearly has jurisdiction. Again, the plaintiff needs the interference of the court, on equitable grounds, to divest his own title to the Michigan lands, and to revest them in the defendant. Moreover, the wrong-doer having made sales, holds the proceeds as a trustee *ex maleficio;* and the court gives the defrauded party the title to the proceeds of sales, as far as they can be traced; and, as ancillary to the general relief, makes the wrong-doer account, in the character of trustee, for the proceeds which cannot be traced in the form of money. (Perry on Trusts, § 170; *Vaughan* v. *Vanderstegen,* 2 Drewry, 363; *Jones* v. *Kearney,* 1 Dr. & War., 167; Lewin on Trusts; Hill on Trustees; 2 Story's Eq. Jur., §§ 1255, 1257.).

The cases of *Wiswall* v. *McGown* (2 Barb., 270), and *Kempshall* v. *Stone* (5 J. Ch., 193), cited on the argument, are not in point. They were actions for specific performance of a contract brought against a vendor, who was, when the bill was filed, unable to convey; and the real *gravamen* of the action was damages for breach of contract. They are not authority to govern an action against a fraudulent vendee of land, in possession of the land itself; or its proceeds, to make him account in his character of a trustee in his own wrong. In *Hart* v. *Ten Eyck* (2 J. Ch., 62, 117), a trustee who, through fraud, had sold land, was made to account for the proceeds in money, of the value of the property at the commencement of the action. Though the judgment in this case is said to have been reversed in 1 Cowen, 743, 744 (note), the reversal was on grounds not affecting this principle.

There is a single other objection to be considered. This is as to parties to the action. It is claimed that the wife of the defendant, and that Nutting & Field, should have been made parties. As the failure to make these persons parties was set up in the answer, it is a legitimate objection if tenable. In

respect to Nutting & Field, it is, doubtless, true that if any relief had been claimed against them they would have been necessary parties. This was so ruled in *Parks* v. *Jackson* (Ct. of Errors, 11 Wend., 442). In that case, an action was brought by a creditor to set aside a conveyance, made by a debtor to a third person, as fraudulent. The action was brought against the fraudulent vendee, who had sold to certain contracting parties. They were not included in the action. The court held that a purchaser under a contract, who enters into actual possession, in pursuance of the contract, and makes improvements, should be made a party to a bill in equity, filed to avoid the title of his vendor, so that the court may make such order in the premises as will be just and equitable in reference to the rights of all concerned. It was further held that the effect of not making him a party in that case was, that, though a decree was obtained avoiding the title of his vendor, and though the creditor became the purchaser of the legal estate of his debtor, at a sheriff's sale, under an execution on the judgment in his favor, he could not recover in ejectment against the holder of the contract. This case would have been applicable if the plaintiff in the present case had sought any relief against Nutting & Field. This is not the case. He proceeds on the theory that the defendant is bound to account to him as a fraudulent trustee, and that one of the items in the account is the contract of Nutting & Field. On this theory, if the plaintiff should be reinvested with his estate he would take the legal title of the land contracted to be sold to Nutting & Field, and stand in the defendant's place. The judgment in the plaintiff's favor would thus assign or transfer to him the defendant's interest in the Nutting & Field contract. It would appear, however, that he should indemnify or save the defendant harmless from his covenants of warranty, and other liabilities incurred in the negotiations with Nutting & Field. This was provided for in the decree. These parties will thus be left in full enjoyment of all the rights existing in them before this action was commenced, as between them and the defendant.

It would not appear that the defendant had any ground of complaint because his wife was not made a party. It can only reduce the completeness of the plaintiff's relief. He cannot object, as he has chosen to omit her. He may have thought that he was protected by the rule, that if the husband's seizin was defeated *ab initio*, the wife's dower must fail. (Cases cited, *supra*.) Whether that rule be applicable to this case or not is immaterial; as, if Mrs. Pennock has an inchoate right of dower in the Hammond land, it is the misfortune of the plaintiff in not making her a party, and he must abide the consequences of his neglect.

It was further claimed that the wife of the plaintiff was a necessary party to the action, as she may have an inchoate right of dower in the lands situated in Michigan. It is not perceived under what rule of law she could have been joined as plaintiff. It is an elementary rule of law that a wife has no estate in the land; nor any interest in real estate; nor property of which value can be predicated. (*Moore* v. *Mayor, etc., of New York*, 8 N. Y., 110.) She has not even a *chose in* action, and cannot protect the land in any way from waste and deterioration, either by her husband or his alienee. Her interest is a mere incident to that of her husband; whatever may defeat that *ab initio*, destroys her claim. (Tudor's Cas., 44; 2 Crabb's Real Prop., 165.) In the present case, if the plaintiff's claim is correct, he had only a conditional estate, subject to be defeated, at his election, on the ground of fraud, by the decree of a competent court. This election is solely with him. His seizin having been defeated, his wife's dower necessarily fails. (1 Wash. on Real Prop., 207, 208, §§ 23, 26.) During the litigation she has no interest which the law recognizes, or which she can protect by appearing as co-plaintiff with her husband. The case is quite different from that of a foreclosure or partition, where a wife must be made a party to bar her contingent right of dower, for that proceeds on the basis that the husband is seized, and the object is to cut off her prospective estate. Where, on the other hand, the question is the preliminary one whether the husband has acquired

any estate, and he seeks to avail himself of a right to defeat his seizin, it would seem that he alone is to be represented as plaintiff in an action for rescission. It is true, that where the wife has an interest adverse to that of the husband she should be joined as defendant. (*Grant* v. *Van Schoonhoven*, 9 Paige, 255, and cases cited on page 257.) In these cases, the wife had a legal interest in the property in litigation, as the controversy concerned her separate estate. They are not authority for cases like the present.

When the title of a grantee is declared, by a court of competent jurisdiction, to be void, any release by the wife of her contingent right of dower fails, as being a release to a stranger to the title. (*Malloney* v. *Horan*, 49 N. Y., 111; *Robinson* v. *Bates*, 3 Metc., 40.) Accordingly, the release granted by Mrs. Pennock or Mrs. Hammond become nugatory as soon as the property is divested from their respective husbands, though this proposition would not affect such persons as had acquired interests, in good faith, before the judgment, or legal notice of the pendency of the action. At all events, on the further disposition of this cause, if the rights of the parties seem to require it, the plaintiff may be directed to cause a proper release of dower to be executed, on the part of his wife, so as to make his right to relief complete.

The order of the court below should be affirmed.

All concur; LOTT, Ch. C., concurs in granting relief, on the ground of fraud, expressing no opinion upon other questions.

Order affirmed.