Hasberg *v.* McCarty.

NATHAN HASBERG, Plaintiff, *against* JOHN B. McCARTY, Defendant.

## [SPECIAL TERM].

(Decided January, 1886.)

By an agreement between plaintiff and defendant, who were co-partners, plaintiff transferred his share of certain merchandise belonging to the partnership to defendant, and it was provided that defendant should transfer such share to a corporation just organized, and receive therefor its stock to such an amount as the company and defendant should agree upon; that such stock should be held by defendant in his own name, with full power to vote upon it and use it and dispose of it as he saw fit, dividends upon it received by him to be paid by him to plaintiff; that in case he sold the stock he should pay plaintiff the amount received therefor; that he might at any time deliver the stock to plaintiff in full settlement of all claims by plaintiff therefor; that in case of the death of defendant plaintiff might demand from his legal representatives a transfer of the stock within three years from such demand; and it was also provided that plaintiff accepted the foregoing agreements in full payment for his transfer of his interest in the merchandise. In an action to have the agreement declared void for fraud of defendant, plaintiff alleged that he was induced to sign it by defendant's representations that the corporation was to have a cash capital of $250,000, which defendant denied. It appeared that the capital of the corporation was in fact formed by putting in the merchandise of the firm, and other merchandise of another firm to a larger amount, the good will of both firms, and patents for the manufacture of fancy articles, at valuations aggregating $230,000, with $20,000 in cash; that if the capital stock of $250,000 was in fact paid in in cash, such payment was formal, and the intent of the parties was to use it for the purchase of the property described; that defendant appropriated to himself the stock received for the good will of their business; and that these facts were concealed by him from plaintiff. *Held*, that, under the circumstances, it was unconscionable and fraudulent in defendant to withhold any material facts from his co-partner, and the suppression of facts so material, even if there were no intention to defraud plaintiff, was sufficient ground for setting aside the transfer from plaintiff to defendant; that plaintiff did not waive his right to rescind by continuing, after having discovered the truth concerning the formation of the corporation, to receive a salary from it as its general manager, which position had been promised him about the time of the transfer, as an inducement to make it; nor did delay by him for four or five months in bringing the action amount to a waiver, since it was not apparent that defendant was prejudiced or plaintiff benefited by such delay.

TRIAL of an action to set aside an agreement and for an accounting.

The action was brought for an accounting between co-partners and to have an agreement, made on January 24th, 1884, by which plaintiff transferred to defendant his share of certain merchandise of the firm, declared void for the fraud of defendant.

The agreement in question provided that defendant should transfer such share to the " McCarty and Hall Trading Company," a corporation just then organized, and should receive therefor capital stock of the company at par, to such amount as the company and the defendant should agree upon; that said stock should be held by defendant in his own name, with full power to vote upon it and use it and dispose of it as he saw fit, dividends upon it received by defendant to be, however, paid by him to plaintiff; that in case defendant sold the stock, he should pay plaintiff the amount he received therefor, and that defendant should have the right at any time to deliver said stock to plaintiff in full settlement of all claim by the latter therefor.

The agreement then made provision in case of the death of either party. In case of the death of defendant, plaintiff was privileged to demand from the legal representatives of defendant a transfer of the said stock " within three years from the date of any written demand " upon such representations.

It was also provided that plaintiff accepts the foregoing agreements in full payment and satisfaction for his transfer of his interest in the merchandise aforesaid.

Final provision was also made for the liquidation of the firm business of McCarty and Hasberg, which firm was then dissolved, after having done business for a period of about ten years.

The merchandise of the firm, estimated to amount to $59,200 in value, in which the interest of plaintiff was one half, was transferred to the new corporation by defendant at the agreed price of $58,000, and stock to that amount issued

to him, which he still holds. He also, without the knowledge of plaintiff, put in the "good will" of the firm business at a valuation of $25,000, and received stock therefor to that amount. He also, without the knowledge of plaintiff, put in a patent for a fancy clock, in which the firm had dealt, at a valuation of $5,000, and received stock therefor. The other persons who united with him to organize the new company, Messrs. Hall and Nicoll, of the firm of Hall, Nicoll & Granberry, put in their merchandise at $97,000, their good will at $25,000, a patent for a folding mirror at $20,000, and cash to the amount of $20,000, and received stock therefor. The aggregate valuations of property so transferred to the company was $230,000, and with the cash made $250,000, which was the amount of the whole capital stock of the corporation.

The plaintiff alleges that he was induced to sign the agreement conveying to defendant all his interest in the aforesaid merchandise of the firm upon the defendant's representations that the corporation to which it was to be transferred was to have a cash capital of $250,000. This allegation is denied by defendant. It is also contended that plaintiff waived the fraud, if any, by failing to rescind promptly after discovery of the fraud.

*Stern & Myers*, for plaintiff.

*J. H. V. Arnold*, for defendant.

J. F. DALY, J.—[After stating the facts as above.]—The relations between the plaintiff and defendant as partners were peculiar. There seems to have been at all times a feeling of the profoundest trust, confidence and dependence on the part of plaintiff, and the assumption and attitude of protection and patronage on the part of defendant. Defendant was the guiding and ruling spirit in an association which, as far as plaintiff was concerned, seemed to partake as much of a friendly as of a business character.

Whatever defendant proposed, plaintiff appeared to as-

sent to without question. The capital on which they started business seems to have been, in effect, all finally procured by plaintiff, while defendant received the largest share of the profits and never repaid plaintiff either principal or interest of what he was indebted for on the capital account. When the proposed corporation was started and defendant approached plaintiff for the purpose of getting the transfer in question, he represented that he was doing it for plaintiff's benefit and against the wishes of the other corporators, and with a loyal determination to care for plaintiff's interest as fully as his own and to share with plaintiff the prospective benefits of the new undertaking. Whatever doubt may exist as to the extent of the influence defendant exercised over plaintiff, is removed by a perusal of the agreement which he placed before the latter to sign.

Such an agreement could be proposed only to a person accustomed to a complete surrender of will and discretion to the other party. The plaintiff's interest, amounting to nearly $30,000, was conveyed away to his partner, and the latter's " agreements " in the paper were to be full payment and satisfaction therefor.

The merchandise was to be turned over to the company for stock at whatever price defendant might agree upon. The stock so received was to be held by defendant, voted upon by him, sold and disposed of by him. If sold, plaintiff was to get what defendant got for it. If he chose to turn it over to plaintiff it settled all claims relating to it. If he died, his representatives were to have three years after demand to deliver it. With such trust and confidence reposed in him, we should expect the highest degree of good faith on the part of the defendant. He denies that he said the company was to have a cash capital of $250,000, but it is certain that he did not confide to plaintiff how their capital was to be made up. He did not tell him that while they were putting in $58,000 of merchandise, Hall and Nicoll were putting in $97,000 of goods, nor that the "good will" of both firms were put in at $50,000; nor that two patents for the manufacture of fancy articles were put in at

Hasberg v. McCarty.

$25,000, and that the new corporation thus loaded with the stocks of the firms going out of business and with good wills and patents, all aggregating $230,000, had only $20,000 of cash with which to do business.

This suppression of facts so material, even if there were no intention to defraud the plaintiff, would be sufficient to authorize me to set aside the transfer from plaintiff to defendant. "In equity the right to relief is derived from the suppression or misrepresentation of a material fact, though there be no intent to defraud. This doctrine is substantially grounded on fraud, since the misrepresentation operates as a surprise and imposition" (*Hammond* v. *Pennock*, 61 N. Y. 145, 152).

Equity will scrutinize agreements between partners closely and watchfully, and will not permit them to stand, if it can discover that they were brought about by concealment, unfairness or other unconscionable conduct (*Platt* v. *Platt*, 2 Thomp. & C. 25).

The condition of the new corporation from the start was such as to call for the exercise of the best judgment on the part of any person who might be asked to give his goods for its stock. Its chances of being able to pay a dividend depended solely upon the business it proposed to carry on (which was about the same as that in which McCarty & Hasberg had been engaged) turning out better than they had found it for the two years preceding their dissolution.

Under these circumstances it would be unconscionable and fraudulent in defendant to withhold any material fact from his co-partner. If he doubted the success of the new enterprise, it was grossly unfair to plaintiff to take his share and put it in the business without disclosing every circumstance which would enable him to use his own judgment as to whether he ought or ought not to engage in the risk; and as defendant's object was to obtain for himself a controlling position and large salary in the new corporation, it would be actually fraudulent to lead plaintiff into any danger of loss for the purpose of accomplishing such object. If, on the other hand, he believed that the corporation

would do a profitable business, that it would pay dividends, and that its stock would prove to be of value, he committed an unquestionable fraud upon plaintiff in appropriating to himself the whole $25,000 of stock issued for the good will, and in concealing from plaintiff the fact of his having arranged to do so.

On the question whether the defendant represented that the corporation was to have a cash capital of $250,000, the preponderance of proof seems to be with plaintiff. He swears to it positively; Bahr and Reed swear to a similar statement at other subsequent times, made by defendant to them. Defendant denies it. He points out the impossibility of plaintiff believing such a representation, or defendant making it, when the arrangement then and there made between them was to put in $58,000 of merchandise for stock. This at first seems a plausible argument, but it must be remembered that plaintiff might have assumed that the $250,000 cash capital was over and above the merchandise. A significant fact was also proved by defendant himself, viz, that in order to avoid any question as to a strict compliance with the statute, the defendants Hall and Nicoll, the persons organizing the corporation, were advised by their counsel that they must raise the money to subscribe and pay for the whole capital stock in cash, and the various merchandise, good will and patent items should be thereupon purchased by the company. The defendant having this actual cash transaction in mind would, without doubt, mention it as a proof of the good condition of the corporation. But it is clear that such cash subscription, if it were effected, was formal, and that the intent of the parties was to use it all when paid in for the purchase of the property described.

It is contended, as a defense to this action, that the plaintiff, having discovered the truth concerning the formation of the corporation, affirmed the transactions between himself and defendant. This claim is based upon his continuing thereafter to receive a salary from the company as general manager, a position which the defendant obtained

for him as soon as the company commenced business, and which he was promised at or about the time of the transfer, as an inducement to make it. This view must be based upon some theory that such salary was a profit or benefit which plaintiff was receiving for the transfer of his interest. I think it cannot be so regarded. It was not a part of the contract which he seeks to disaffirm, but was a separate, independent contract made with a third party—the corporation.

The salary was not a profit derived from the transfer, but was a payment to a servant of the company for services rendered as a full equivalent. If defendant had taken plaintiff into his individual service, or had procured employment for him with a stranger, the services and employment and the wages thereof would be independent of the transaction now sought to be avoided, for plaintiff could be discharged at any time at the will of his employer without affecting the original transfer of property. It is not the same thing as the receipt of dividends upon the stock, which would be deriving a direct profit from the transaction, and therefore inconsistent with an intention to disaffirm it.

Nor does the fact that plaintiff delayed for four or five months bringing this action to disaffirm, amount to a waiver, since it is not apparent that defendant was prejudiced by such delay or that plaintiff was benefited by it. It is only where there is delay, coupled with the retention of property or rights received under the fraudulent transaction, that defeats the right to rescind. Plaintiff had nothing to restore to defendant as a condition of disaffirmance, for defendant held the stock which was the consideration of plaintiff's conveyance. The relief prayed for should be granted, and an accounting of the co-partnership will be ordered. Defendant will be charged with the value of the merchandise transferred to him, being its value at the date of the transfer, and with $2,500 on the original capital account, with interest from the date of the formation of the co-partnership in 1875.

Judgment for plaintiff accordingly.