### ALKER v. ALKER et al.

*(Supreme Court, Special Term, New York County. December, 1890.)*

EQUITY—RESCISSION OF CONTRACTS—MISTAKE.

An agreement was entered into between the children of a decedent and his widow to accept the provisions contained in the draft of a proposed will which had been prepared with decedent's knowledge, and submitted to him for approval. Decedent had made a memorandum on the paper indicating a modification, but he did not execute it as a will, or declare that it contained the disposition that he intended to make of his property. Some of the parties signed the agreement in ignorance of their legal rights, and under erroneous representations that their father had declared that the proposed will expressed his intention. *Held,* that the agreement would be rescinded, though the misrepresentations were not fraudulent or intentional.

Action by Alphonse Alker against Marie C. S. Alker and others.

*Charles E. Lydecker,* for plaintiff. *Thorndyke Saunders,* for defendants.

INGRAHAM, J. I am entirely satisfied, after a most careful examination of the testimony in this case, that the charge against the plaintiff of having made, intentionally, any fraudulent or false representations to the defendants, or any of them, or of having procured their signatures to the so-called trust agreement by any intentional fraud, is without foundation. The agreement was against his interest, as by it he postponed the time in which he would be entitled to any interest in his father's estate until after the death of his mother, and the contingency upon which he could have subsequently acquired any other interest, except as next of kin or heir at law, was so remote as to be scarcely worth considering. But, notwithstanding my conviction that he is innocent of any actual fraud, I am satisfied that upon a consideration of the position of the parties to the agreement, and the relation that existed between them, and considering the circumstances attending its execution, under well-settled principles of equity the trust agreement must be set aside. Mr. Alker died on the 23d of November, 1886, and it appeared for some time prior to his death he had discussed with his wife the propriety of making a will, and the provisions that such a will should contain. A short time prior to his death his wife had requested plaintiff to prepare a will. In accordance with what was supposed to be Mr. Alker's wishes, and in pursuance of that request, plaintiff did prepare a draft will, by which a trust was created for the use of Mr. Alker's wife for life, and after her death to divide the property into six shares, one of which was to be held in trust for each of his daughters during their lives, with remainder over to their children, and one to be paid to each of his sons absolutely upon the death of their mother. In this draft will no person was named as executor or trustee. This draft appears to have been delivered to Mr. Alker, who made a pencil memorandum on the margin, which indicated a modification, so as to provide that the income of the estate should also be applied to the support and maintenance of his daughter Sophia, and his son Paul, as long as they remained single. With the single exception of this pencil memorandum, however, there is not the slightest evidence that this proposed will was ever approved by Mr. Alker or that he ever intended to execute it. It does not appear that he ever requested his son to have it copied, or that he had made up his mind as to what disposition of his property he would make. On the 19th of November, Mr. Alker was stricken with apoplexy, and on that day plaintiff took this draft will, modified it to meet what he supposed the pencil memorandum indicated, added a clause appointing himself and his mother and brother executrix and execu-

tors of the will, and added the proper attestation clause. There is no evidence, however, that this was ever presented to Mr. Alker, that he saw it, or approved of it. Mr. Alker died on the 23d of November without having executed any will. Shortly after his death it seems to have been assumed by the plaintiff and his mother that this draft will directly expressed the intentions of the testator as to the disposition of his property, and it was proposed that his children should unite in carrying such intention into effect, and for that purpose the plaintiff prepared an agreement known as the "trust agreement," and on the 4th of December the widow and all of the next of kin and heirs at law of Mr. Alker met. It does not appear that the matter had been discussed to any extent in the family except between the plaintiff, his mother, his brother, and one of his sisters, Mrs. Babet. The family, however, met, and it was then stated to them that this agreement had been prepared for the purpose of carrying into effect the expressed intention of their father, which, without their consent, could not be given effect to in consequence of his failure to execute the proposed will annexed to the trust agreement, and upon that statement, and in order to carry into effect what the children supposed to be his declared intention, the paper was executed. The plaintiff was a lawyer of several years' practice, and had assisted his father in the practice of the law and in looking after his property. His brother was a law student, over 21 years of age, and the other children were daughters. They had no independent advice of any kind, but apparently relied upon the plaintiff. The application was made to them at a period when they were in great distress, in consequence of the death of their father, and when a sentimental regard for the father's wishes was apparently a controlling impulse. No information was given to them as to their interests in their father's estate, or of the effect of the execution of the trust agreement, and, although I assume that the papers were read over to them by the plaintiff, I am satisfied that the defendants executed the trust agreement without an appreciation of the effect it would have upon their interest in the property. The relations that existed between the parties were of a confidential character. As between plaintiff and his mother and sisters it was that of a son and brother combined with that of legal adviser. There also existed the relation of parent and children, as there was an idea that what was being done was for the benefit of the mother. These facts bring this case within a class of cases in which, applying an established principle of equity, agreements have been set aside. This principle is illustrated by the leading case of *Pusey* v. *Desbouvrie*, 3 P. Wms. 315. In that case the plaintiff had a legacy of £10,000 left her by her father's will, upon condition that she should release her orphanage share. She accepted the legacy and executed the release; she subsequently filed a bill to set aside the release and recover her orphanage share. Lord Chancellor Talbot, in granting the decree, said: "It is true it appears that the son, the defendant, did inform the daughter that she was bound either to waive the legacy given by the father, or to release her right by the custom; and so far she might know that it was in her power to accept either the legacy or orphanage part. But I hardly think she knew she was entitled to have an account taken of the personal estate of her father, and first to know what her orphanage part did amount to, and that, when she should be fully apprised of this, then, and not until then, she was to make her election." And Judge Story, in commenting on this case, says, (1 Story, Eq. Jur. § 118:) "There was no fraud in her brother, but it is clear that she relied upon her brother for knowledge of her rights and duties in point of law, and he, however innocently, omitted to state some most material legal considerations affecting her rights and duties. She acted under this misplaced confidence, but was misled by it, which of itself constituted no inconsiderable ground for relief. But a far more weighty reason is that she acted under ignorance of facts, for she neither knew, nor had any means of knowing, what her orphanage share was

when she made her election. It was therefore a clear case of surprise of matters of fact as well as of law." See, also, section 119, and cases there cited.

In connection with this "surprise of matter of fact and law," the relation that existed between the parties has a material bearing on the question of setting aside the agreement. Thus Judge Story says, at section 308: "There must be some relation between the parties which compels the one to make a full discovery to the other, or to abstain from all selfish projects. But when such a relation does exist, courts of equity, acting upon this superinduced ground in aid of general morals, will not suffer one party, standing on a situation of which he must avail himself against the other, to derive advantage from that circumstance; for it is founded in a breach of confidence. The general principle which governs in all cases of this sort is that if confidence is reposed, and that confidence is abused, courts of equity will grant relief." And in *Hammond* v. *Pennock*, 61 N. Y. 152, the same principle is recognized. It is there said: "In equity, the right to relief is derived from the suppression or misrepresentation of a material fact, though there be no intent to defraud. * * * The doctrine is substantially grounded in fraud, since the misrepresentation operates as a surprise and imposition upon the opposite party to the contract. It is inequitable and unconscientious for a party to insist on holding the benefit of a contract which he has obtained through misrepresentation, however innocently made." I think in this case there was express misrepresentation made to these defendants to induce them to sign the trust agreement, and there was also a suppression of information to which they were entitled. In the first place it was represented that this agreement was to carry out the intention of the parents, while I think it clear from the evidence that there was no intention expressed by Mr. Alker that would justify such a representation. He certainly never expressed an intention to execute the will, or one containing substantially the same provisions. So far as appears, the matter was yet under consideration, and the paper containing his supposed intention was never in a position to be executed as a will, and, further, it does not appear that he had ever expressed any intention as to the persons who should be appointed trustees. There was also the suppression of information as to what the defendants were entitled to receive, and as to the effect of the instrument they were to sign; and this, considering the relations that existed between the parties and the very serious consequences to the daughters that resulted from the execution of the agreement, entitled them to relief. The fact that the interests of the infants would be promoted by upholding the agreement does not prevent the court from making such a decree as justice requires, and I think, on the whole case, the trust agreement should be set aside, and the three trustees mentioned should be compelled to account for the money they have received. The income of the property that has been paid to Mrs. Alker, and used by her for her support under the trust agreement, should not be charged against her, as while the agreement existed, before it was set aside, the trustees were justified in paying it to her, and she was justified in appropriating it for her support. The decision of the court and judgment should be settled on notice, and the question of costs to be reserved until the coming in of the referee's report on the accounting and the entry of final judgment.