THE CONTINENTAL INSURANCE COMPANY and Another, Plaintiffs, *v.* THE EQUITABLE TRUST COMPANY OF NEW YORK, Defendant.

Supreme Court, New York County, March 18, 1926.

Fraud — action to recover amount paid for corporate bonds following rescission by purchaser on ground of fraud — complaint sufficiently alleges fraud — not necessary to allege mala fides of defendant — defendant cannot be relieved from liability for statements made in prospectus or advertisement by statement therein that they are based on information obtained from corporation whose bonds it is selling — issue presented by complaint — plaintiff did not delay unreasonably before rescinding contract — plaintiff justified failure to return original bonds by fact that they are valueless and also by fact that they had been, at defendant's request, converted into bonds of reorganized company.

In an action to recover the amount paid by the plaintiffs for corporate bonds sold to them by the defendant following a rescission of the contract of sale by the plaintiffs on the ground of fraudulent representations, the complaint is sufficient and raises a triable issue, since it alleges that the defendant purchased an issue of the bonds of the corporation and advertised the sale of the bonds by circulars stating falsely the amount of assets of the issuing corporation and falsely concealed certain activities which the corporation was about to enter into that would be detrimental to the interests of the bondholders. It is not necessary to allege *mala fides* of the defendant.

The mere fact that the defendant in its advertisements and circulars stated that it relied upon information given to it by the president of the issuing corporation and that it did not guarantee the accuracy of the information, does not relieve it from its liability in recklessly making false representations as to the worth of the bonds and the security protecting them.

It cannot be said that the plaintiffs did not rescind the contract with reasonable diligence, since though it was known to the plaintiffs in April, 1921, that the issuing corporation was in financial difficult es, it refrained from any action at the request of the defendant who urged the plaintiffs to take part in the reorganization of the issuing corporation, and since it appears that the plaintiffs did not actually discover that fraud had been practiced upon them until a few

days before this action was commenced; the delay was directly invited and occasioned by the conduct of the defendant.

The failure of the plaintiffs to restore the original bonds is justified by the fact that the bonds were of no value and by the further fact that through the request of the defendant the plaintiffs had converted their bonds into bonds of the reorganized corporation, and, therefore, the plaintiffs were entitled to rescind by restoring all that they received in reliance upon the statements of the defendant.

Motion by defendant to dismiss an amended complaint as insufficient in law.

*M. E. Harby*, for the plaintiffs.

*Murray, Aldrich & Roberts* [*William Dean Embree* and *Otey McClellan* of counsel], for the defendant.

Proskauer, J. For the purpose of this motion the allegations of the complaint must be taken as true and liberally construed.

This action at law seeks (upon rescission for misrepresentation) repayment of the purchase price of bonds of the Green Star Company. In an action predicated upon rescission and not for damage, it is not necessary to allege *mala fides* of the defendant. (*Hammond* v. *Pennock*, 61 N. Y. 145; *Roberts* v. *Fisher*, 43 id. 159; Williston Sales, § 608.) As is stated by Judge Story in *Doggett* v. *Emerson* (7 Fed. Cas. No. 3960): " The question is not, whether he acted basely and falsely; but whether the plaintiff purchased upon the faith of the truth of his representations. If the plaintiff did so purchase * * * the bargain ought to be set aside."

The representations were in an advertisement in the New York *Times* and in a circular issued by the defendant. Both purport to base most of the representations upon a letter from one Mercadante, president of the Green Star Company. The defendant advertised, however, that it relied in purchasing the bonds on this very information. This and practically every essential statement made in Mercadante's letter and the advertised summary thereof are alleged to be false. The circulars also state that the president of the trust company was a director of the corporation. The more important misrepresentations, based on Mercadante's letter, charged are that the Green Star Company was operating a steamship line over established and profitable routes; that it had certain peculiar influences and connections which rendered it independent of general market conditions; that its capital stock of $10,000,000 was fully paid up, when in fact $6,000,000 of it, in contravention of the law of Delaware, had been issued for a promissory note. Aside from the legal responsibility of the defendant for these particular misstatements, it must certainly be held responsible for holding out falsely that *it* relied on this information in purchasing

the bonds. Nothing could be more persuasive to an investor in giving credence to the Mercadante statements than that defendant itself had sufficient confidence in them to induce the investment of some millions of dollars. This responsibility the trust company cannot as a matter of law escape merely because it added to the circular the statement that while the information was procured from reliable sources, it was not guaranteed by the trust company. There is no question of guaranty. The plaintiffs have the right to trial on the allegation of a false representation that the defendant acted on belief in these identical statements. It is also directly charged against the trust company that it had knowledge that at the time of the issuance of the circular it was in contemplation that additional ships and property were to be acquired by the Green Star Company, in connection with which liabilities and obligations were to be incurred to the extent of many millions of dollars more than the amount of the bonds offered for sale, and that this important circumstance was concealed. This allegation of direct concealment by the defendant raises a triable issue. It is proper also that the trial court should pass upon the responsibility for *all* the representations. The defendant does not as a matter of law escape all responsibility by the insertion of the above-quoted protective clause, though on proof this may become a question of law on the trial.

Statements made to induce a sale, but purporting to be on the authority of a third person, have frequently been held to be actionable. As was said by HOLMES, J., in *Whiting* v. *Price* (172 Mass. 240; 51 N. E. 1084): "Here the ground of complaint is that the plaintiff did not get what he expected." And he held that the circumstance that the information was ascribed to a third person did not bar rescission. To the same effect is *Hammond* v. *Pennock* (61 N. Y. 145).

It can be inferred from this complaint that in giving currency to Mercadante's representations the trust company acted at least recklessly. A prospective purchaser might fairly infer from the statement that the defendant's counsel were passing upon the issue, the truth of the statement that the $10,000,000 of stock was actually paid up. The statements on Mercadante's authority that the company had established trade routes and that its stockholders had such connections as to free the company from the danger of the vicissitudes of trade are made credible by the advertised fact that defendant's president was a director of the company and the above-considered representation that the trust company had relied on this information. A trial must decide whether the trust company, although not liable as guarantor, should in good

conscience return the consideration paid in reliance on false statements thus persuasively, though innocently, made on the ground that the plaintiffs did not get what the advertisements fairly led them to suppose they would get.

The amended complaint is also attacked on the ground that the plaintiffs did not disaffirm with reasonable diligence and that, as they cannot make literal restitution, they cannot rescind. The chronology of events is as follows:

The bonds were purchased in 1919. In November, 1919, the defendant in a circular recommending the bonds, stated the estimated income of the Green Star Company for 1920 as $14,000,000. In January 1920, it advertised that the 1919 profits applicable to interest were $2,800,000, whereas in fact there was a deficit for that year of over $1,000,000. In April, 1920, the defendant issued a circular that it would pay the interest coupons, without disclosing the fact that the Green Star Company did not have sufficient money to meet its current obligations, and the necessary money to pay this interest was loaned by the defendant. In May, 1920, the defendant, by a circular, advertised on the basis of a statement for nine months a profit of $2,770,000; the statement was essentially false. The bonds were actually delivered in October, 1920. The second interest installment became due on October 15, 1920, and was paid through the trust company. The installment of interest due on April 15, 1921, was not paid. The defendant thereupon, on April 21, 1921, notified plaintiffs that the trust company would endeavor to protect the bondholders; that a committee had been formed to represent them; that the chairman of the committee was a vice-president of the trust company; that the bonds should be deposited with that committee so that there should be a responsible body to act for the bondholders in negotiations with the United States Shipping Board; it was also stated therein that a large part of the difficulties had arisen out of the demoralized condition of shipping resulting from the general depression of business, from competition of foreign lines and from lack of a definite policy on the part of the United States Shipping Board. It was falsely stated that the United States Shipping Board was deeply interested in maintaining the Green Star Company. Nothing was said to indicate that the original representations as to the condition of the company were false. Relying on this circular the plaintiffs deposited their bonds with the trust company as depositary in pursuance of a further circular issued on June 15, 1921, requesting such action. In August, 1921, a circular was issued, signed by the defendant's vice-president as chairman of said bondholders' committee, asking co-operation of the bondholders,

stating that the trust company " felt the responsibility of taking the most reasonable steps for the protection of bondholders." In October, 1921, a further circular was issued by the chairman, with the approval of the defendant, stating that the company had secured the appointment as receiver one of its own executives. In November, 1922, a proposed reorganization agreement was issued by the same committee. A further circular, intended to induce co-operation, was issued on June 16, 1923. Relying on defendant's actions, the plaintiffs co-operated with it, deposited their bonds and received ultimately in return therefor certain securities of a reorganized company. In May, 1924, the plaintiffs heard a rumor that some of the bondholders had been made whole and thereupon caused an investigation to be made. They thus discovered facts which fairly placed them upon notice. Almost immediately and on July 17, 1924, they made the tender of all cash and securities they had received and elected to rescind.

The mere statement negatives the contention that as a matter of law the plaintiffs may be said to have unreasonably delayed. They acted throughout in co-operation with and in reliance upon the defendant. Delay was directly invited and occasioned by the continuous course of the defendant.

The plaintiffs justify their failure to restore the original bonds in two ways. They first alleged that the bonds are wholly worthless. As is stated in Black on Rescission (§ 622): "The rule requiring the restoration of whatever may have been received under a contract * * * does not apply to property which is absolutely and entirely without value."

That proposition is sustained by *Gould* v. *Cayuga County Nat. Bank* (86 N. Y. 75); *Roth* v. *Baum* (153 N. Y. Supp. 185) and other cases cited by the textwriter.

They further justify on the principle stated by Black (§ 618): " If the party's failure or inability to make restitution * * * is not his fault and not in consequence of his act and justice can be done without requiring such restitution, the contract may be rescinded and the equities of the parties adjusted in the decree. And in particular, if the restoration of the former status is prevented by the opposite party, or if it has become impossible because of such party's fault, fraud, or wrongful conduct, such impossibility of restitution is no obstacle to the rescission of the contract." (See, also, Black Rescission, § 626.)

As is stated in *Butler* v. *Prentiss* (158 N. Y. 49): " ' If the wrongdoer has by his own act complicated the case so that full restoration cannot be made, he has but himself to blame.' "

4

Here the bonds were exchanged for other securities at the request of the defendant, purporting to act in the interest of the bondholders. It assumed a relationship of confidence with the bondholders who had purchased from it. It did not disclose to them the errors in the initial circular. It attributed the difficulties incorrectly to other causes. The plaintiffs' change of position was in reliance on the defendant. Under the authorities, therefore, they may rescind by restoring all that they received pursuant to such reliance.

No opinion is here expressed upon the merits of the action. As a matter of pleading the plaintiffs are entitled to their day in court upon this complaint.

Motion denied. Order signed.