WILCOX v. THE IOWA WESLEYAN UNIVERSITY *et al.*

**False representations: IN SALE OF LAND: EQUITY.** While to sustain an action at law for damages, on the ground of false and fraudulent representations in the sale of land, it must be shown that their falsity was known to the party making them, equity will, nevertheless, grant relief, although the party making the representations did not know whether they were true or false, or though they were made through mistake and innocently, if the purchaser relied on them and was induced thereby to enter into the contract.

*Appeal from Henry District Court.*

WEDNESDAY, OCTOBER 4.

THIS action is brought to foreclose a mortgage executed by the defendant, the college, on twenty acres of land, including the college building, made to secure a promissory note, which reads as follows:

"HENRY COUNTY, IOWA, *Sept.* 1, 1857.

"Four months after date the Iowa Wesleyan University promise to pay Alexander Lee, or order, the sum of $2,000 and interest from date, at the rate of ten per cent per annum, for value received, for which a mortgage is given.

"(Signed)     D. WORTHINGTON,
"*President of Board of Corporators.*
"THOS. E. CORKHILL,
"*Secretary of Corporators.*"

The plaintiff became the owner and holder of the note and mortgage on the 9th of December, 1857, and several payments were made to him thereon, between that time and the commencement of this suit.

The defense set up and relied upon, in the court below, was, that the claim of plaintiff had been fully settled and paid off in property, which the plaintiff received in full satisfaction and discharge of his claim. The plaintiff

amended his pleading by averring, in substance, that while urging payment of his claim from the corporation, its agents proposed to deed to him certain real property which had been donated to the college, to assist in paying its debts, to the amount of sixty per centum of plaintiff's claim, if plaintiff would remit or donate the balance to defendant; that the lands proposed to be deeded to the plaintiff were the following, viz.: Certain lands in Allegheny city, Pennsylvania, donated to the college by one John M. Gregg, represented by defendant's agent to be worth, in cash, $750; a lot in Bellfontaine, Ohio, donated by Joshua Martin, represented to be worth, in cash, $250; and eighty acres of land in Fremont county, Iowa, donated by Nelson Lathrop, and represented to be worth $350. That the defendant, by its agent, represented said lands to be worth said several sums in cash; and that deeds therefor should be immediately made and papers exchanged within a reasonable time.

That having no knowledge of the situation or value of said lands, and relying upon the truthfulness of the representations made to him by the agent of the college, and reposing special trust and confidence therein and in the character of said agent, he being a minister of the gospel of the same church with plaintiff, and being appealed to by said agent as such member for assistance to the college, which was under the patronage of said church, plaintiff consented to the proposed arrangement, and authorized his attorney at that time, in 1861, to have the same carried out; that said arrangement has never been carried out; that the land represented to be in Allegheny City, Pa., is in fact not worth over $50, being a small lot of ground, 24 feet by 100 feet, situated out of said city and in no respect as represented.

That the same is true of the land in Bellfontaine, Ohio, it not being worth over 40 *per centum* of what it was represented.

That no deed was ever executed to plaintiff or any one for him for the land in Iowa.

The plaintiff also pleads that he was at the time of the above arrangement residing, and still resides, in the State of Missouri, and that the war of the rebellion and the necessity of protecting his property there so occupied his time and attention that he was for a long time prevented from looking after and ascertaining the true situation and value of said property, and that, by reason of the false representations of the defendant as to the situation and value thereof, and the defendant's failure to fulfill its part of the agreement, plaintiff is not bound thereby.

The material issues arise upon these averments in plaintiff's amended petition, the defendant confessing and avoiding some and denying all other allegations therein.

The pleadings are very voluminous, and it would occupy too much space to set them out in full. The above statement of them is sufficient to give a proper understanding of the *material* issues.

The cause was tried by the court and a decree rendered for the defendant canceling the note and mortgage, and releasing and discharging the defendant from all liability thereon.

The plaintiff appeals.

*T. W.* and *John S. Woolson* for the appellant.

*Amblers & Babb* for the appellee.

MILLER, J. — The Iowa Wesleyan University is an eleemosynary corporation under the laws of this State. The evidence shows that the note sued on in this case, with others, was secured by a mortgage on twenty acres of land on which the college building was situated. In 1861 the plaintiff was the *bona fide* holder of this note and was demanding payment. The corporation at this time was

largely indebted, and had in its hands a large amount of assets, mostly of recent donation to it for the purpose of assisting it in paying off its indebtedness, and were generally made on condition that they should not be used unless a sufficient amount was donated, in the opinion of a certain committee, to pay off all the debts. This amount of donations was secured. In June, 1861, the agent of the corporation, a minister of the gospel belonging to the same denomination with the plaintiff, and known to plaintiff as such, visited the plaintiff on behalf of the corporation, with a view of effecting a settlement of his claim, and at this interview the arrangement alleged in plaintiff's amended petition was made and reduced to writing, and is as follows:

"I, the undersigned D. P. Wilcox, hereby agree to take for my claim against the I. W. University, at Mount Pleasant, sixty cents on the dollar of the amount due me of principal and interest. I agree to take in payment on the above proposition real estate at a fair cash rate, reserving the right of choice in all the property subscribed.

"If I take the property in Allegheny City, Pa., or the property in Ohio, given by Bro. Martin, or the land given by Dr. Marsh, will allow the same prices that it was taken at. The university is to pay the back taxes on the property that I get. I also reserve the privilege of sending my son or daughter, now at home with me, to said university, with the privilege of paying the tuition, board and books in the same kind of pay, at the same rates, that I get from the university."

"Signed at PALMYRA, Mo., *June* 6, 1861.

                                        "D. P. WILCOX."

The plaintiff claims that he was induced to enter into this agreement by the false and fraudulent representations of the agent of the corporation with whom he negotiated. This is controverted by the defendant.

Without entering into a detailed discussion of the evidence, we think it clearly shows, that, when the agent of the corporation visited the plaintiff at his home in Missouri for the purpose of effecting a settlement of his debt against the corporation, he soon possessed himself of plaintiff's confidence, and, through the alleged representations, induced him to enter into the arrangement to accept sixty *per centum* of his debt in property, and to take the Allegheny City and Bellfontaine lots at the prices averred, when in truth they were comparatively worthless. The lot in Allegheny City was represented by the agent as a large lot, suitable for a residence, and that the donor, Gregg, bought the block of which this lot was one-half, on speculation, and paid for the whole fifteen hundred dollars in gold, and the agent advised plaintiff to take this lot. He said he had not seen the property himself, but he knew the donor, who was a smart business man, a leading member of the church, and that what he said about the lot could be relied upon. That Gregg had donated the lot but refused to deed it unless it could be made to pay $750 of the debt of the university. The evidence shows that the plaintiff relied implicitly on the statements of the agent in respect to the situation and value of this lot; and, under all the circumstances, we think he had a right so to rely on them. The same is true as to the Bellfontaine lot. Plaintiff confided in the representations of the agent that this lot was worth $250 in cash, and agreed to take it at that price, and the balance of sixty per cent of his claim in Western lands.

In the following October the plaintiff visited Mount Pleasant, and while there the agent of the university offered to let him have eighty acres of land in Fremont county, Iowa, for the balance of his claim, representing it to be well worth that amount, and it was so agreed between them, and that the university should procure good titles to be made to the plaintiff for the several pieces of land, viz.: the Allegheny City lot, the Bellfon-

taine lot and the eighty acres of land in Fremont county, Iowa, which should be in full of the plaintiff's claim on the basis of sixty per centum of the whole amount. Up to this time the plaintiff had no knowledge whatever of the situation or value of any of this property, and relied entirely upon the representations made to him by the agent of the university. It is also clear, from the evidence, that the agent made the representations in good faith, believing each piece of land to be as he had represented it, both as to description and value, but had no personal knowledge in respect to the truth of his representations. It was also agreed that upon the delivery of the deeds to Mr. Woolson, plaintiff's attorney, the note and mortgage, which was in his hands, should be by him delivered to defendant. Plaintiff returned home to Missouri, where he was detained and prevented because of the war and ill health from examining any of the lands, until the summer of 1863 when he left home for Cleveland, Ohio, to attend a "water-cure" establishment; and coming by way of Mount Pleasant, he met a new agent of the university, who represented there being some difficulty about the title of the Fremont county land, and desired plaintiff to take eighty acres in lieu thereof in Keokuk county, Iowa, which was agreed to, and the agent executed a bond for a deed therefor. The bond required the deed to be made to a married daughter of plaintiff, which plaintiff intended as an advancement to her. At this same time the agent stated to the plaintiff that the board of trustees were then in session, and he wished something to show what arrangements had been made, and a paper was drawn up by the agent and signed by appellant without reading it, supposing it contained a memorandum of what was then agreed to between them, but which was an acknowledgment that his claim was canceled, which was contrary to the real agreement; that appellant's claim was not to be discharged

and the note not to be delivered up until the deed to the Keokuk land should be delivered.

While at Cleveland the deeds for the lot at Allegheny City and that in Bellfontaine were forwarded by Mr. Woolson to appellant, who soon afterward proceeded to Allegheny City, where he found the deed did not describe the lot. The lot was not in Allegheny City, but in Reserve township, outside the city. The size of the lot was only 24 by 100 feet. The ground was rough and hilly, good for no purpose, worth not to exceed $50; was considered of so little value that it had never been assessed for taxation. He found the lot in Bellfontaine to be worth little more than $100.

The appellant returned home to Missouri where his personal presence seems to have been demanded, on account of the war and the dangers threatening his family and property, until about two years afterward he first had an interview with an agent of the university and sought a correction of the wrong which he felt had been done him, but without success. Subsequent efforts were made by him for the same purpose, all of which were unavailing, and, finally, when the note and mortgage were about to be barred by the statute of limitations, he brought this suit.

Is the plaintiff entitled to be relieved from his agreement compounding his claim against defendant, and, if so, to what extent?

The appellee cites *Holmes* v. *Clark*, 10 Iowa, 423; which holds, that in order to sustain an action on the ground of false and fraudulent representations in the sale of land, it must be shown that the representations were false and fraudulent within the knowledge of the party making them; and he argues that appellant is, in view of the law, without remedy in this case. The rule laid down in that case is well established and universally followed in all actions *at law* for damages sustained by false and fraudulent representations in a sale (see cases cited by appellant

in that case); but equity will grant relief on the ground of fraud, although the party representing a material fact, made the assertion *without knowing* whether it was true or not. The consequences to the person who acted on the faith of the representations are the same whether he who made them knew them to be false or was ignorant whether they were true or not. And if the representations were made to influence the conduct of another party in a matter of business, and they did influence him to his prejudice, equity will interfere and grant him relief. Willard's Eq. Jur. 150; *Ainslie* v. *Medlycott*, 9 Ves. 21; *Harding* v. *Randall*, 3 Me. 332; *Smith* v. *Richards*, 13 Pet. 38; *Trumbull* v. *Gadsden*, 2 S. C. Eq. 14; *McFarren* v. *Taylor*, 3 Cranch, 281.

And even if by mistake, and innocently, a party misrepresents a material fact, upon which another party is induced to act, it is as conclusive a ground of relief in equity as a willful and false assertion. *Taylor* v. *Ashton*, 11 Mees. & Wels. 400; *Foster* v. *Charles*, 6 Bing. 396.

Now it is entirely clear, from the evidence, that the plaintiff was thus induced to act in this case. The lots were represented to be of particular situations and values, when they were in fact otherwise; and while the agent informed plaintiff that he had never seen the lots himself, and did not make the representations from his own knowledge, yet he did what was, substantially, the same thing, by stating what the donors said in respect to their situations and values, and that he (the agent) knew one of the donors, who he represented to be a smart business man and a leading member of the church, whose statements could be relied upon. Through the representations and persuasions of the agent, the plaintiff generously donated or agreed to donate forty per centum of his claim to the university, and receive in payment of the balance real property at cash prices. This he was, in equity and conscience, entitled to receive. He selected the two lots

Wilcox v. The Iowa Wesleyan University.

before mentioned upon the representations of the agent, relying entirely, as he had a right to do under the circumstances, thereon, respecting the situation and value of the same. The lots were not as represented. They were represented by the agent to be worth, in the aggregate, the sum of $1,000, whereas, they were worth less than one-fifth that sum. Under these circumstances the plaintiff is clearly entitled to equitable relief from so unconscionable a bargain. Nor do we think, under all the circumstances of the case, that he has lost his right to relief by any delay or laches on his part. And as, by his agreement, he was to receive land at cash prices, to the extent of sixty per centum of his claim, which the university has failed to pay or convey to him, he will be entitled to recover the money instead of these lots, according to his contract entered into June 6, 1861, viz.: $1,000 with six per centum interest from that date, upon reconveying the lots to the university or to whom it shall direct.

In respect to the deed tendered by the defendant for eighty acres of land in Keokuk county, the evidence shows, that, at the time of the tender, the grantor named therein was dead, so that the deed would convey no title.

We find, however, that the other objections made by appellant to this deed are merely technical, and therefore, upon the making and delivery of a sufficient warranty deed by the university, for said land to the plaintiff or such person or persons as he may designate, within ninety days, and depositing the same with the clerk of the district court, this portion of the plaintiff's claim will be satisfied; and in case of failure to do so, on part of the defendant, the plaintiff will be entitled to recover, in addition to the $1,000 and interest before mentioned, the sum of $350, and interest from June 6, 1861, and a decree of foreclosure for both sums.

The judgment of the district court is reversed, and the cause will be remanded for further proceedings not incon-

sistent with this opinion, or the appellant may, if he so elect, have final judgment in this court.

Reversed.