(72 Misc. Rep. 211.)

### GUMBINER v. GUMBINER.

(Supreme Court, Special Term, Kings County. May, 1911.)

MARRIAGE (§ 58*)—ANNULMENT—GROUNDS—MISREPRESENTATION.

    Three years after the consummation of a marriage it will not be annulled at the suit of the wife on the ground that three years before it was contracted the husband told her he was perfectly well, where in the six-year period he had enjoyed periods of good health, but at the commencement of the action his health had declined, and physicians had pronounced his malady tuberculosis, though he had previously received medical treatment adapted to that disease, but had thereafter improved thereunder, and enjoyed apparent good health.

    [Ed. Note.—For other cases, see Marriage, Cent. Dig. § 122; Dec. Dig. § 58.*]

Action by Adele Gumbiner against Alfred Gumbiner to annul a marriage. Complaint dismissed.

Greenthal & Greenthal, for plaintiff.

PUTNAM, J. Over a year before 'this marriage plaintiff heard from a friend that her suitor, Mr. Gumbiner, had some pulmonary trouble. In September, 1904, she mentioned this to defendant. She testified that he replied: "No. I had a cold. I have nothing the matter with me. I am perfectly well." She also added: "At the time he looked well to me. He told me there was no such thing as pulmonary trouble; that he was well and in a fit condition to marry." His health continued apparently good. Whether there were further conversations with defendant on this subject, or any inquiries made of his family, does not appear. Fourteen months later, and on November 6, 1905, they were married by a civil ceremony at the New York City Hall.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

As the young husband could not then provide a home, his wife continued to live with her mother. Defendant's prospects improved, and when two years later, in 1907, they were in a position to keep house, a further religious ceremony was solemnized, and thereafter they lived together. Defendant, so far as appears, was outwardly in good health; and the married life was unclouded till August, 1910. Defendant then had a cold, which grew into grippe, with pleurisy and fever, so that he had to go into the country for three months.

It also transpired at the hearing (though it does not appear just when Mrs. Gumbiner learned of these events) that defendant had a serious illness when a medical student in 1902. In that spring his sputum had blood, and an affection of the lungs was feared. Although there was no test for the distinctive bacilli of tuberculosis, the physicians sent him for two or three months to the Loomis Sanitarium. Thence, in the fall of 1902, he went to Los Angeles for 18 months, where he was much benefited. Upon his return to New York, his symptoms had disappeared. Even six years after this alleged representation, and upon this first illness after his marriage, when pleurisy had developed, the diagnosis of defendant's condition was uncertain. Dr. Breiter, who also had treated him in 1902, indicated his doubts by this statement of what he found in August, 1910:

"I found signs of pleurisy over the same region, and I think also on the other side, and I told him then: 'It may be grippe.' Still with the knowledge that he had had tuberculosis, and had had repeated attacks of cold at times, which passed off with the cold, I put him on his guard, and told him, 'It may be a recurrence. It is best to consider it a recurrence to be on the safe side.'"

About the end of November, 1910, Dr. Carlisle pronounced his ailment tuberculosis and by his advice defendant went to Saranac. Dr. Carlisle, however, cannot, with certainty, say if this tuberculosis is of long standing.

It is urged that defendant, being a physician, is chargeable with knowledge of the true condition of his health. But, in view of his good health (that, except for usual colds, appears to have been uninterrupted) for six years, how could scienter be found in 1904, and consequent concealment? Looked at upon the narrow basis of a contract merely, the elements of fraud (which are never presumed) are not established. Tucker v. United Life & Accident Ins. Ass'n, 133 N. Y. 548, 30 N. E. 723. Matters of general bodily health and other qualities and circumstances as to the fortune and position of the intending parties do not go to the fundamental and essential elements of the marriage relation. In England hardly any fraud, however gross, can make voidable a marriage by persons who intelligently took part in the marriage ceremony. Moss v. Moss (1897) Probate, 263. Although it is said that this state looks on marriage "in no other light than a civil contract" (Di Lorenzo v. Di Lorenzo, 174 N. Y. 472, 67 N. E. 63, 63 L. R. A. 92, 95 Am. St. Rep. 609), yet, even in a marriage like this, without issue, the public is concerned. Marriage obligations once entered upon, and more solemnly repeated in a second ceremony, after full means of inquiry and with ample time for deliberation, are not lightly to be dissolved. Plaintiff has no actionable griev-

ance in the husband's failing health, first manifested six years after the alleged representation of fitness to marry, and following upon three years of actual consortium. To annul this marriage would go beyond Domschke v. Domschke, 138 App. Div. 454, 122 N. Y. Supp. 892.

Complaint dismissed.