## SECOND DEPARTMENT, NOVEMBER, 1920.

PAULINE CHAVIAS, Appellant, *v.* PINCUS CHAVIAS, Respondent.*

*Husband and wife — action for annulment of marriage — evidence insufficient
to show fraud.*

Appeal by plaintiff from a judgment of the Supreme Court, entered in
the office of the clerk of the county of Rockland on the 15th day of May, 1920,
dismissing her complaint.

Judgment affirmed.   Mills, Rich and Putnam, JJ., concur; Blackmar, J.,
reads for reversal, with whom Jenks, P. J., concurs.

BLACKMAR, J. (dissenting): I dissent from the judgment about to be pro-
nounced.   The complaint seeks to annul the marriage between the parties on
the ground of fraud.   It alleges in substance that the defendant, for the pur-
pose of inducing the plaintiff to marry him, represented to her that he was a
normal, healthy man, capable of consummating the marriage, " and that he
had and possessed the capabilities of being a vital factor in procreation; "
that the plaintiff believed this, and, relying thereon, married the defendant;
that the representation was false and known to defendant so to be; and that
he was congenitally unable to procreate children.   The answer is a denial
only.   The evidence is uncontradicted and conclusively established that for
the purpose of inducing the plaintiff to marry him, the defendant represented
that he was capable of procreating children; that such representation was
false; that he was congenitally sterile; and that plaintiff, relying on such
representation, consented to marry him.   The finding of fact is that there
was no false and *fraudulent* representation, and it is obvious from the findings
and opinion of the trial justice that relief was denied to plaintiff because the
defendant was not guilty of an active fraud in that he did not know that the
representation was false.   The real question in the case is, therefore, whether
an innocent false representation which induced the plaintiff to marry is a
sufficient ground to annul the marriage, or whether no false representation
is sufficient unless knowingly made with intent to deceive.   In *Gumbiner* v.
*Gumbiner* (72 Misc. Rep. 211) and *Scott* v. *Shufeldt* (5 Paige, 43) it is inti-

* See *ante,* p. 882.— [REP.

mated that the kind of fraud sufficient as the basis of a decree annulling a marriage is an active fraud involving *scienter* or intent to deceive. This point, however, is not expressly decided and is rather an inference or implication from the wording of the opinions of the two eminent judges who wrote in those cases. As the question is an open one, it may be considered upon reason. The Domestic Relations Law contains a provision (§ 7) that a marriage is void from the time its nullity is declared by a court of competent jurisdiction if either of the parties thereto " Consents to such marriage by reason of force, duress or fraud." The popular meaning of the word " fraud " unquestionably includes corrupt intent, and, if the fraud is effected by means of a false statement, an intent to deceive to the injury of the party to whom the statement is made. If this is the meaning of the word " fraud " in the statute, then the trial justice was correct in his disposition of the case. The power to divorce persons competently married is conferred solely by statute.* But the power of a court of equity to declare a marriage void for fraud or for any ground that lies behind the consent which is the essence of the marriage relation is not conferred by statute.† That power rests on the inherent jurisdiction of a court of chancery to set aside contracts because of the absence of a fair and free consent. With respect to fraud and duress, it was first exercised in this State by Chancellor Sanford in the case of *Ferlat* v. *Gojon* (1 Hopk. Ch. 478). In that case the Court of Chancery assumed jurisdiction, without statutory authority, to declare a marriage void on the ground of fraud. This power was thereafter recognized in the Revised Statutes, passed in 1828 (2 R. S. 138–142),‡ and that provision of the Revised Statutes is carried in substance into our present Domestic Relations Law (§ 7). As the jurisdiction of the Court of Chancery existed before the adoption of the statute authorizing the annulment of a marriage for fraud, and as that jurisdiction depended upon the inherent powers of the Court of Chancery to dissolve a marriage for the absence of proper consent of the parties, I think that the use of the word " fraud " in the statute does not necessarily limit the power of the Court of Chancery to an active fraud with *scienter*, but it means such a fraud as courts of equity recognize as sufficient for the annulment of a civil contract. In invoking a court of equity to rescind or annul a contract on the ground of fraud, it is not necessary to prove a malicious intent, an intent to deceive, or *scienter*. A false material statement, although innocently made, which induced the contract, is sufficient to move a court of chancery to decree its rescission or annulment. (*Canadian Agency, Ltd.*, v. *Assets R. Co.*, *No. 1*, 165 App. Div. 96, and cases there cited.) A court of equity has power, therefore, to set aside a contract for false representations although innocently made. That being the law, I cannot think that the Revised Statutes meant to limit the power of a court of equity to annul a marriage for fraud to cases where there was an actual fraud involving moral delinquency. A primary purpose of the marriage rela-

---

* See Code Civ. Proc. § 1756 *et seq.*— [REP.

† See Code Civ. Proc. §§ 1743, 1750.— [REP.

‡ See R. S. pt. 2, chap. 8, tit. 1, arts. 1, 2; 2 R. S. 142, § 20.— [REP.

tion is the procreation of children. Certain members of society are sterile and incapable of procreation. Both a healthy, normal man and a healthy, normal woman ordinarily desire children, and it is proper, although unusual for either one, prior to the marriage, to question the other on this subject, and if a false statement induces the contract, it is immaterial whether the representation was consciously false or innocently made. A contract is not annulled by a court of equity to punish a defendant for fraud, but to relieve the plaintiff from a contract entered into in reliance upon false representations. The real basis of this head of equity jurisdiction is relief to the plaintiff and not punishment to the defendant. In this view of the case the plaintiff did not receive justice and the judgment should be reversed. The findings of fact state that the plaintiff voluntarily cohabited with the defendant for one year after she had learned that he was unable to procreate children. No such defense appears in the answer and this finding should be disregarded as not within the issues. The uncontradicted evidence also establishes that when plaintiff was informed by a physician that the husband was sterile, the husband stated to her that he had been examined by a more eminent physician and pronounced capable. That statement was false, and it was in reliance upon it that the plaintiff continued matrimonial relations for another year. I vote for a reversal of the judgment and the granting of a new trial. Jenks, P. J., concurs.